Benjamin N. Gluck - State Bar No. 203997
  bgluck@birdmarella.com
Nicole R. Van Dyk - State Bar No. 261646
  nvandyk@birdmarella.com
Ashley D. Bowman - State Bar No. 286099
  abowman@birdmarella.com
Naomi S. Solomon - State Bar No. 321357
  nsolomon@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Plaintiff Charles Coe

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Charles Coe,<br><br>                Plaintiff,<br><br>        vs.<br><br>UNITED STATES OF AMERICA;<br>TRACY L. WILKISON (OFFICIAL<br>CAPACITY), KRISTI KOONS<br>JOHNSON (OFFICIAL CAPACITY)<br><br>                Defendants. | CASE NO. 2:21-CV-03019-RGK-MAR<br><br>**NOTICE OF MOTION AND<br>MOTION FOR RETURN OF<br>PROPERTY  PURSUANT TO FED.<br>R. CRIM. P. 41(g)**<br><br>Date:  June 1, 2021<br>Time:  9:00 a.m.<br>Courtroom:  850<br><br>*[Filed Concurrently with Declarations<br>of Benjamin G. Gluck and Nicole R.<br>Van Dyk; and Proposed Order]* |

3716797.4

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on June 1, 2021, at 9:00 a.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable R. Gary Klausner, United States District Court Judge, located at 350 W. 1st St., Los Angeles, CA 90012, Plaintiff Charles Coe ("Plaintiff") will and hereby does move the Court for an order for the immediate return of property pursuant to Federal Rule of Criminal Procedure 41(g) and that it be done without requiring Plaintiff to surrender his Fifth Amendment rights.

Plaintiff's counsel initiated a meet-and-confer conference with the Government by letters dated April 20, 2021, and April 27, 2021, and met and conferred telephonically with counsel for the Government on April 28, 2021.

This Motion is based on this Notice, the accompanying memorandum of points and authorities, the concurrently filed declarations of Benjamin N. Gluck and Nicole R. Van Dyk, all other pleadings and papers on file in this action, and such other documents, oral evidence, or argument as may be presented before or at the time of the hearing on this Motion or of which the Court may take notice.

DATED:  May 4, 2021        Benjamin N. Gluck
                       Nicole R. Van Dyk
                       Ashley D. Bowman
                       Naomi S. Solomon
                       Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

By:    */s/ Benjamin N. Gluck*
                 Benjamin N. Gluck
           Attorneys for Plaintiff

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................. 7

II.     FACTUAL BACKGROUND .............................................................. 8

        A.      USPV's Private Safe Deposit Box Service ............................. 8

        B.      Plaintiff's box at USPV.......................................................... 9

        C.      The Government's position(s) with respect to the return of
                property ................................................................................ 10

                1.      The Government does not contend that it had authority to
                        search or seize the contents of the boxes at USPV for
                        evidentiary or forfeiture purposes ................................. 10

                2.      The Government's return of property to various claimants ....... 13

                3.      The Government's announcements about its investigatory
                        intentions ...................................................................... 14

III.    LEGAL STANDARD ....................................................................... 15

        A.      Standards for motions for return of property ....................... 15

        B.      Standards for proceeding pseudonymously .......................... 17

IV.     ARGUMENT ................................................................................... 17

        A.      The Court should exercise its jurisdiction to decide this motion.......... 17

        B.      The Court should order the immediate return of Plaintiff's
                property ................................................................................ 18

        C.      The Government's desire to engage in new investigations does
                not permit it to retain property without legal authority and does
                not allow it condition the return of Plaintiff's property on the
                waiver of his Fifth Amendment rights ................................. 19

        D.      Plaintiff is willing to disclose his identity to a special master or
                to a filter team ..................................................................... 22

V.      CONCLUSION ............................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*United States v. Ailemen,*
   893 F. Supp. 888 (N.D. Cal. 1995)........................................................22

*Ashwander v. Tennessee Valley Auth.,*
   297 U.S. 288 (1936) .................................................................................23

*Bittaker v. Woodford,*
   331 F.3d 715 (9th Cir. 2003) ...................................................................21

*Brewster v. Beck,*
   859 F.3d 1194 (9th Cir. 2017) ...........................................................18, 19

*United States v. Comprehensive Drug Testing, Inc.,*
   621 F.3d 1162 (9th Cir. 2010) ................................................................15

*Cox v. United States,*
   No. CV 07-1200-PHX-SMM, 2008 WL 477877 (D. Ariz. Feb. 19,
   2008) .......................................................................................................18

*Doe v. United States,*
   21-cv-2803-RGK-MAR ...........................................................12, 14, 19

*Doe v. United States,*
   21-cv-2803-RGK-MAR ...................................................................14, 19

*Does 1-6 v. United States,*
   21-cv-3254-RGK-MAR ...........................................................................14

*Does I-XXII v. Advanced Textile Corp.,*
   214 F.3d 1058 (9th Cir. 2000) ................................................................17

*Gardner v. Broderick,*
   392 U.S. 273 (1968) .................................................................................22

*United States v. Gladding,*
   775 F.3d 1149 (9th Cir. 2014)...........................................................16, 17

*Hiibel v. Sixth Judicial Dist. Ct. of Nev.,*
   542 U.S. 177 (2004) .................................................................................20

4

*Hoffman v. United States,*
    341 U.S. 479 (1951) ................................................................................... 19

*United States v. Ibrahim,*
    522 F.3d 1003 (9th Cir. 2008) .................................................................. 15

*United States v. Kama,*
    394 F.3d 1236 (9th Cir. 2005) .................................................................. 16

*United States v. Kriesel,*
    720 F.3d 1137 (9th Cir. 2013) ............................................................ 17, 18

*Lefkowitz v. Cunningham,*
    431 U.S. 801 (1977) ................................................................................. 21

*Lefkowitz v. Turley,*
    414 U.S. 70 (1973) ................................................................................... 22

*United States v. Martinson,*
    809 F.2d 1364 (9th Cir. 1987) .................................................................. 15

*Otonye v. United States,*
    903 F. Supp. 357 (E.D.N.Y. 1995) ........................................................... 16

*Ramsden v. United States,*
    2 F.3d 322 (9th Cir. 1993) ....................................................................... 16

*Ohio v. Reiner,*
    532 U.S. 17 (2001) ................................................................................... 20

*Simmons v. United States,*
    390 U.S. 377 (1968) ................................................................................. 21

*United States v. U.S. Private Vaults,*
    21-cr-00106-MCS ..................................................................................... 13

*Warden, Md. Penitentiary v. Hayden,*
    387 U.S. 294 (1967) ................................................................................. 21

**Other Authorities**

Fourth Amendment .......................................................................... *passim*

Fifth Amendment ............................................................................. *passim*

5

Fed. R. Crim. P. Rule 41 .................................................................................*passim*

# I.

# INTRODUCTION

The following facts are not subject to dispute:

- Plaintiff leased Box No. 904 at U.S. Private Vaults.  Plaintiff has the key and the lease receipt to prove this.  The box contained cash only, with no papers or other material that would identify its owner.

- On about March 22, 2021, the Government took possession of the contents of Box 904 and has yet to return them.

- Since March 22, 2021, counsel has contacted the FBI, submitted a claim via the FBI's web page, written the lead AUSA, and filed the above-captioned lawsuit, all in an effort to obtain the return of Plaintiff's possessions.  Counsel received no response.

- The warrant related to USPV makes clear, and the Government's own statements concede, that the Government does not have any legal basis to continue holding Plaintiff's property.

Together, these facts indisputably mean that Plaintiff is entitled to the immediate return of his possessions.

Federal Rule of Criminal Procedure 41 permits a party aggrieved by a search or seizure to move for the return of property.  Fed. R. Crim. Pro. 41(g).  This Rule, and the Court's inherent equitable authority, also empowers the Court to fashion appropriate relief related to the retention and return of property.  This easily includes orders regarding how the property should be returned.  Specifically, Plaintiff should not be required to waive any Fifth Amendment rights in order to obtain his property.  Indeed, even if the Court determined that Plaintiff needed to disclose further information, Plaintiff has offered to disclose any such information to a filter team, which would avoid any potential encroachment on Plaintiff's Fifth Amendment

1    rights.  But the Government has ignored all of Plaintiff's overtures and refuses to

2    give any indication that it will ever return the property.

3         The facts and law are clear: The Government admits it has no legal authority

4    authorizing the continued retention of Plaintiff's possessions.  Plaintiff can present

5    the key and rental receipt.  Continuing to retain Plaintiff's possessions without

6    authority would represent a callous disregard for Plaintiff's rights and the Court

7    should order them returned.

8                                    **II.**

9                        **FACTUAL BACKGROUND**

10   **A.     USPV's Private Safe Deposit Box Service**

11        Since 2011, U.S Private Vaults has offered private safe deposit boxes for rent

12   at its public facility at 9182 West Olympic Blvd. in Beverly Hills.[1]  The business

13   was advertised by prominent signage and an elaborate and detailed website.

14        USPV's Olympic Blvd. facility housed about 1000 safe deposit boxes, each

15   with its own key.  USPV made them available to the public on yearly leases and

16   provided security and insurance for the contents.  USPV did not keep a key to any

17   rented boxes, which means that the only person with the ability to open the box was

18   the renter or the renter's authorized designee.[2]  The company offered biometric

19   access to box-holders, including through retinal scan.  According to USPV's web

20   site, USPV provided several advantages unavailable at bank safe deposit boxes

21   (including insurance, quick access, no "bank holidays," and a wider selection of box

22   sizes), and its security was handled by ADT.

23        Though the Government has made various accusations about the supposedly

24   nefarious intent of renters at USPV, the Government does not and clearly cannot

25   claim that all renters acted with bad intent.  Indeed, over the past two weeks or so,

---

[1]   *See* https://www.usprivatevaults.com.

[2]   *See* https://www.usprivatevaults.com/uspv-vs-bank-safe-deposit-box.

1   the Government has returned hundreds of thousands of dollars in gold, silver, and

2   cash just to clients of undersigned counsel.  (Declaration of Benjamin N. Gluck

3   ("Gluck Decl.") ¶ 3.)  These clients include retirees, small and large business

4   owners, and various and sundry other individuals who used USPV for all kinds of

5   reasons.[3]  (*Id.*)  Obviously, the Government does not – and cannot – contend that

6   merely using USPV to house cash and valuables creates grounds for seizure.

7   **B.      Plaintiff's box at USPV**

8          Charles Coe leased Box 904 at USPV.  It contained only currency.  During

9   the search and seizure at USPV, the Government seized Coe's possessions from Box

10  904.  Since that date, Coe, through undersigned counsel, has contacted the FBI at a

11  telephone number provided by agents during the search, submitted a claim through

12  the FBI-created website for USPV box holders, written directly to Andrew Brown,

13  the lead AUSA on this matter, and filed the instant lawsuit.  (Gluck Decl. ¶ 4.)  The

14  Government did not respond to these claims or communications.[4]

15         Plaintiff has the key to Box 904, and he also has a copy of the rental receipt

16  substantiating his lease of the box at the time the Government seized its contents.

17  Plaintiff is also prepared to accurately describe the contents of Box 904.

18

19

20  [3]   Counsel has spoken with renters who used USPV because they were referred to it
    by banks who had no room in their vaults, because it was next door to a sushi
21  restaurant they frequented, because it was on the route of their commute to the
    office, and other mundane reasons.  (Gluck Decl. ¶ 3.)
22

23  [4]   Indeed, the Government did not respond to counsel's written April 20, 2021,
    request to meet-and-confer per the Court's standing order.  On April 27, 2021,
24  counsel sent another letter setting out the intended content of this Motion and noting
    again the Court's meet-and-confer deadline.  In response, Mr. Brown and counsel
25  met and conferred by telephone on April 28.  Mr. Brown listened to counsel's
    description of this Motion and counsel's reasoning but did not substantively respond
26  and did not provide any further information about how or when Mr. Coe could
27  receive his possessions.

28

**C.      The Government's position(s) with respect to the return of property**

In light of the filings in several cases and statements by its spokesman, the Government's position has become clear.

**1.      The Government does not contend that it had authority to search or seize the contents of the boxes at USPV for evidentiary or forfeiture purposes**

The sole search warrant that the Government has unsealed[5] states explicitly

ATTACHMENT—USPV SEIZURE WARRANT

ITEMS TO BE SEIZED

The items to be seized are the following pieces of business equipment located at U.S. PRIVATE VAULTS, INC., 9182 WEST OLYMPIC BLVD., BEVERLY HILLS, CA 90212:

    a.   The business computers;

    b.   The money counters;

    c.   The nests of safety deposit boxes and keys. This warrant does not authorize a criminal search or seizure of the contents of the safety deposit boxes. In seizing the nests of safety deposit boxes, agents shall follow their written inventory policies to protect their agencies and the contents of the boxes. Also in accordance with their written policies, agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property.

    d.   The digital and video surveillance and security equipment; and

    e.   The biometric scanners.

---

[5]   AUSA Brown has stated that there is a search warrant that is purportedly identical to the unsealed seizure warrant but has declined to unseal it despite numerous requests.  To the extent the Government relies on that sealed warrant in any way, Plaintiff objects unless the Government first unseals it.  Similarly, Plaintiff objects to any reliance by the Government on other documents it has declined to provide to counsel.  These include the protocols referenced in the affidavit and

that it does *not* authorize "a criminal search or seizure of the contents of the safety deposit boxes:"

(Gluck Decl. ¶ 5, Exh. A (emphasis added).)

The warrant thus expressly declines to grant the government any authority to *keep* Plaintiff's possessions. Instead, *at most* the warrant authorizes *only* (a) an "inventory" and (b) an "inspection" to identify the owner. These limitations are also set out in the affidavit in support of the warrant:

> T.    NOTIFYING USPV CUSTOMERS HOW TO CLAIM THEIR PROPERTY
>
> 108. The search and seizure warrants the government seeks list the nests of safety deposit boxes at USPV among the items to be seized. These nests of safety deposit boxes are evidence and instrumentalities of USPV's criminality. The warrants authorize the seizure of the nests of the boxes themselves, not their contents. By seizing the nests of safety deposit boxes, the government will necessarily end up with custody of what is inside those boxes initially. Agents will follow their written inventory policies to protect their agencies from claims of theft or damage to the contents of the boxes, and to ensure that no hazardous items are unknowingly stored in a dangerous manner. Agents will attempt to notify the lawful owners of the property stored in the boxes how to claim their property, such as by posting that information on the internet or at USPV itself, or by contacting the owners directly. In order to notify the owners directly, agents will, in accordance with their policies regarding an unknown person's property, look for contact
>
> [40] The FBI policy regarding taking custody of an unknown person's property provides, in part, that agents "inspect the property as necessary to identify the owner and preserve the property for safekeeping." The inspection "should extend no further than necessary to determine ownership."
>
> 85

search warrant(s) and any portions of the affidavit explaining the "nests" of safe deposit boxes or the physical layout of USPV.

(Gluck Decl. ¶ 6, Exh. B (emphasis added).)

The Government has also asserted to this Court (and supported with sworn declarations) that it completed all of the searches authorized by the warrant no later than March 26, 2021:

> 20  The government obtained a sealed criminal seizure warrant for,
> 21  among other things, the nests of safety deposit boxes located at
> 22  USPV.  During the week of March 22 through 26, federal agents
> 23  executed the seizure warrant and removed the nests of safety deposit
> 24  boxes, inventorying their contents in the process, as authorized in
> 25  the seizure warrant and discussed in the affidavit supporting it.
> 26  (Brown Decl. ¶ 3).  The inventory was completed on site.  Agents
> 27  left USPV on March 26, 2021.  While the anonymous plaintiff declines
> 28  to allege which safety deposit boxes are his, all the inventory
>
>                                   2

> 1  searches were completed by March 26, 2021, so his property will not
> 2  be searched again, absent additional justification, such as a search
> 3  warrant for a specific box or boxes.  (Bailey Dress Decl. ¶ 2).  The

*Doe v. United States*, 21-cv-2803-RGK-MAR (Doc. 15).

Between the warrant and the Government's statements, two points cannot be disputed: (1) the Government was *never* given authorization to *retain* Plaintiff's property for any investigatory purpose, and (2) any authorized inventory and inspection was completed over a month ago.[6]

---

[6]  Plaintiff reserves all arguments based on the plainly dubious nature of the Government's scheme here.  Put simply, the Government claims that, because it was

### 2.      The Government's return of property to various claimants

Undersigned counsel represents a number of safe deposit box lessees whose property was taken by the Government.  Over the past two to three weeks, the Government has returned property to some of these box holders.  (Gluck Decl. ¶ 3.) The Government has *not* required that the lessee present identification or even to be present at the return.  (Declaration of Nicole R. Van Dyk ("Van Dyk Decl.") ¶ 3.) Instead, the Government has relied on counsel's presentation of the key that works in the lock the Government removed from that lessee's box.  (*Id.*)  Some of counsel's clients have received many hundreds of thousands of dollars in returned cash, gold, or jewelry.  (*Id.*)

Despite this, the Government has again and again refused to say that it will return Plaintiff's possessions at all.

---

intent on forfeiting USPV's rack of used metal boxes worth at most several hundred dollars, it "had no choice" but to take custody of, inventory, and inspect, easily more than $50,000,000 in possessions belonging to some 800 unrelated box holders.  This appears to be an enormous tail wagging a vanishingly small dog.  Indeed, because the indictment's forfeiture provisions are actually based on conduct not by USPV but by the separate jewelry business that operated at the same location, the tail seems connected to the wrong dog entirely.  *See United States v. U.S. Private Vaults*, 21-cr-00106-MCS (Doc. 1) (indictment alleging forfeiture-triggering activity done by *Gold Business* that shared location with USPV).  A reasonable person could easily conclude that taking and searching the *contents* of the boxes was the true *purpose* of the USPV seizure, not just an unintended but unavoidable byproduct as the Government seeks to portray and justify it.

This is further supported by the curious nature of the seizure of the "nests."  As noted, these nests are not inherently valuable, the Government did not seize *all* of USPV's fixtures, and most curiously, the first thing the Government did when seizing the nests was to destroy their (even limited) value by prying the front frame with all the doors off each nest.  Why would the Government seek to seize *only* the nests and then immediately destroy any value they had?  As noted, the seizure of the nests does not appear to be the Government's *true* purpose here.

**13**

### 3.   The Government's announcements about its investigatory intentions

Though the Government has refused to say when or how it will return Plaintiff's possessions, it has made pellucid that it wants to leverage the "inventory" and "inspection" seizures by using them for criminal investigatory purposes – despite the warrant's admonition that no criminal search or seizure of the contents of the safe deposit boxes was authorized.  For example, the Government has repeatedly stated to this Court:

> To be sure, some of the customers of USPV are honest citizens to whom the government wishes to return their property.  But the majority of the box holders are criminals who used USPV's anonymity to hide their ill-gotten wealth.  *To distinguish between honest and criminal customers, the government must examine the specific facts of each box and each claim* . . . .  The Executive Branch is tasked with investigating criminal leads.  *The public interest demands that the government pursue these leads vigorously.*

*Doe v. United States*, 21-cv-2803-RGK-MAR (Doc. 15) at 10:9-19 (emphasis added); *Does 1-6 v. United States*, 21-cv-3254-RGK-MAR (Doc. 16) at 17:9-18 (emphasis added).

Despite the impropriety of the Government's position here, AUSA Brown has been boldly forthright about the Government's intention from the beginning, explaining to counsel as early as March 24 that "if a deposit box holder identifies himself or herself, the Government will commence a criminal investigation into the holder, including but not limited to determining whether he or she came by the contents in his or her safe deposit box(es) legally."  *Doe v. United States*, 21-cv-2803-RGK-MAR (Doc. 7-2 (Decl. of Ariel Neuman)).  Indeed, the official spokesperson for the U.S. Attorney's Office represented as much to the media, stating that "each box is being considered on a case-by-case basis, and we will

investigate the boxes, or claims made on them, only if there is an indication that the contents are related to criminal activity." *Probable Cause or Fishing?  US Agents Seize Valuables From Safe Deposit*, Los Angeles Daily Journal, April 19, 2021.

In short, consistent with its assumption that the "majority of box holders are criminals," the Government freely admits its intent to use any information gleaned in the claims process in order to conduct criminal investigations.

## III.

## LEGAL STANDARD

### A.   Standards for motions for return of property

Federal Rule of Criminal Procedure 41(g) empowers the Court to order the return of both lawfully and unlawfully seized property.  The Rule provides that "[a] person aggrieved by . . . the deprivation of property may move for the property's return" and "[i]f it grants the motion, the court must return the property to the movant[.]"  Fed. R. Crim. P. 41(g).  Rule 41(g) offers recourse for *anyone* "whose property or privacy interests are impaired by [a] seizure."  *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1173 (9th Cir. 2010), *overruled in part on other grounds as recognized by Demaree v. Pederson*, 887 F.3d 870, 876 (9th Cir. 2018).  Even if the original seizure was legal, Rule 41 provides for relief for the continued improper retention of property: "As amended, Rule 41[g] provides that . . . a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it."  Rule 41, 1989 Advisory Committee Notes, 124 F.R.D. 397, 427-429.

The Court may exercise its equitable jurisdiction to return property seized by the federal government where, as here, there are not criminal proceedings pending against the movant.  *United States v. Martinson*, 809 F.2d 1364, 1366-67 (9th Cir. 1987).  In these circumstances, relief under Rule 41(g) is treated as a civil equitable proceeding, and the Federal Rules of Civil Procedure apply.  *See*, *e.g., United States v. Ibrahim,* 522 F.3d 1003, 1008 (9th Cir. 2008).

In addition to the power granted by Rule 41, the Court has the inherent equitable power to consider motions for return of property.  "This power stems from the court's disciplinary authority over attorneys appearing before it as officers of the court.  This inherent power also extends to federal agents charged with 'observ[ing] 'standards for law enforcement' established by 'the federal Rules governing searches and seizures.'"  *Otonye v. United States*, 903 F. Supp. 357, 360 (E.D.N.Y. 1995) (citations omitted).

Where no criminal proceeding is pending against a Rule 41(g) movant, the district court considers four factors in deciding whether to exercise jurisdiction under the Rule:  whether "(1) the Government displayed a callous disregard for the constitutional rights of the movant; (2) the movant has an individual interest in and need for the property he wants returned; (3) the movant would be irreparably injured by denying return of the property; and (4) the movant has an adequate remedy at law for the redress of his grievance."  *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) (quoting *Ramsden v. United States*, 2 F.3d 322, 324-325 (9th Cir. 1993)) (internal citation marks omitted).  Not all factors must weigh in the movant's favor for the district court to exercise jurisdiction; rather, a court engages in a balancing test.  *See Ramsden*, 2 F.3d at 326 (exercising jurisdiction and granting Rule 41(g) motion despite finding that the plaintiff had not shown irreparable injury).

Once the Court determines its jurisdiction, it determines whether property should be returned to its owner based on "reasonableness under all of the circumstances."  Fed. R. Crim. P. 41(g) Advisory Comm. Notes (1989), 124 F.R.D. 397, 427-29; *Ramsden*, 2 F.3d at 326.  The standard of proof is preponderance of the evidence.  *See Motion to Return Property*, 3A Fed. Prac. & Proc. Crim. § 690 (4th ed.) (citing cases).

Importantly, where, as here, the property at issue is not being held as part of a criminal search or seizure, the property owner "is presumed to have a right to [the property's] return, and the government has the burden of demonstrating that it has a

legitimate reason to retain the property." *United States v. Gladding*, 775 F.3d 1149, 1152 (9th Cir. 2014) (citing *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987) (alteration in original). Indeed, a property owner's Rule 41(g) motion "should presumptively be granted if the government no longer needs the property for evidence." *United States v. Kriesel*, 720 F.3d 1137, 1144 (9th Cir. 2013). The Government can rebut this presumption only with admissible *evidence*, not mere arguments or assertions by Government attorneys. *See, Gladding*, 775 F.3d at 1153 ("[R]epresentations are not evidence unless adopted by the opponent. The government failed to submit any evidence [supporting] a 'legitimate reason' for retention of the noncontraband files. For that reason, the government could not have carried its burden of proof[.]"); *Motion to Return Property*, 3A Fed. Prac. & Proc. Crim. § 690 (4th ed.) ("If factual issues need to be resolved to decide the motion, the court must receive evidence on the factual issues.")

**B.     Standards for proceeding pseudonymously**

The Ninth Circuit has noted that a party may use a pseudonym where disclosure of the party's true name would be harmful: "In this circuit, we allow parties to use pseudonyms in the 'unusual case' which nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.'" *Does I-XXII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000) (discussing with approval cases where courts permitted parties to proceed anonymously because disclosure would create risk of criminal prosecution) (citing *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)).

## IV.

## ARGUMENT

**A.     The Court should exercise its jurisdiction to decide this motion**

Each of the factors the Court considers in determining whether to exercise jurisdiction over a Rule 41(g) motion is met here. First, the Government's retention of Plaintiff's property – indeed its refusal even to tell Plaintiff that it plans to return

1   it – despite the Government's admission that it has no legal authority to retain it is a

2   callous disregard of Plaintiff's rights.  Second, Plaintiff has an individual interest

3   and need for his possessions.  Put simply, they belong to Plaintiff and they are

4   valuable.  Third, Plaintiff will be irreparably harmed if Plaintiff's property is not

5   returned.  Again put simply, Plaintiff will be permanently deprived of his

6   possessions unless the Government returns them.  And fourth, Plaintiff has no other

7   avenue by which to seek return of his property, which means Rule 41 relief is

8   appropriate.  *See*, *e.g.*, *Cox v. United States*, No. CV 07-1200-PHX-SMM, 2008 WL

9   477877, at *6 (D. Ariz. Feb. 19, 2008).

10  **B.      The Court should order the immediate return of Plaintiff's property**

11          The Government does not have a warrant and does not claim to have a

12  warrant that allows it to retain Plaintiff's property.  Plaintiff is prepared to present

13  the key to the box in question, prepared to present a copy of the rental receipt for the

14  box, and prepared to describe the box's contents.[7]  In light of the security at USPV,

15  as the Government has described it, Plaintiff's ability to present these items and

16  information easily demonstrates by a preponderance of the evidence that the

17  contents of Box 904 belong to him.

18          The Government admits it does not have a criminal search or seizure warrant

19  for the contents of Box 904 and did not seize the contents of Box 904 pursuant to a

20  criminal search or seizure warrant.  This means that Plaintiff's motion "should

21  presumptively be granted."  *Kriesel*, 720 F.3d 1144.

22          Even a temporary delay in returning property has Fourth Amendment

23  ramifications.  For example, the Ninth Circuit has found that a "30-day impound is a

24  'meaningful interference with an individual's possessory interests'" under the

25  Fourth Amendment.  *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017)

26

27  [7]   During the search, the Government dismantled USPV's biometric identification

28  system.  Apparently it cannot put it together again.  (Gluck Decl. ¶ 7.)

(quoting *Soldal v. Cook County*, 506 U.S. 56, 61 (1992)).  This is true even when the original seizure was justified: "The Fourth Amendment doesn't become irrelevant once an initial seizure has run its course. . . .  Thereafter, the government must cease the seizure or secure a new justification."  *Brewster*, 850 F.3d at 1197 (citing *United States v. Jacobsen*, 466 U.S. 109, 124 & n.25 (1984)).

Here, the Government says the inventory and inspection were completed no later than March 26, 2021, when it ended its search of USPV.  But the Government has continued the "impound" of Plaintiff's property for well over 30 days (and counting) since then and the Government still refuses to return it.  Because the Government has no Fourth Amendment authority for the continued retention of Plaintiff's property, that retention violates the Fourth Amendment.

**C.**    **The Government's desire to engage in new investigations does not permit it to retain property without legal authority and does not allow it condition the return of Plaintiff's property on the waiver of his Fifth Amendment rights**

In the face of the rule that Plaintiff's motion should presumptively be granted, the Government asserts that it first wants to investigate Plaintiff.  To be clear, the Government is entitled to investigate whomever it wants.  But there are two things it cannot do: first, it cannot take or retain people's property without legal authority just because it intends to investigate them.  And second, it certainly cannot use the threat of unauthorized retention of that property to force people to waive their Fifth Amendment rights by giving the Government leads in its investigation.

The Government has announced that it will use a claimant's name to commence a criminal investigation of that claimant and the contents of that claimant's box.  *Doe v. United States*, 21-cv-2803-RGK-MAR (Doc. 7-2 (Decl. of Ariel Neuman)).  Combined with the Government's declared belief that "the majority of the box holders are criminals who used USPV's anonymity to hide their ill-gotten wealth," *Doe v. United States*, 21-cv-2803-RGK-MAR (Doc. 15) at 10:9-

1   12, this means that Plaintiff is entitled to assert the Fifth Amendment because he has

2   "reasonable cause to apprehend danger from a direct answer," *see Hoffman v.*

3   *United States*, 341 U.S. 479, 486 (1951).

4        ***This is not to say that Plaintiff is guilty of any crime***.  But "one of the Fifth

5   Amendment's 'basic functions . . . is to protect *innocent* men . . . 'who might

6   otherwise be ensnared by ambiguous circumstances.'"  *Ohio v. Reiner*, 532 U.S. 17,

7   21 (2001) (quoting *Grunewald v. United States*, 353 U.S. 391, 421 (1957)

8   (alterations in original)).  The Government's (conclusory and baseless) assumptions

9   about the reasons customers used USPV are certainly enough to mean that these

10   circumstances are ambiguous.

11        It is well-established that in circumstances such as these, the Fifth

12   Amendment applies even to disclosure of Plaintiff's name.  The Government has

13   announced that once it learns Plaintiff's name it will commence a criminal

14   investigation of him, focused on the source of the possessions he has in Box 904.

15   The Supreme Court has explained:

16        [The Fifth Amendment] privilege not only extends "to answers that

17        would in themselves support a conviction . . . but likewise embraces

18        those which would furnish a link in the chain of evidence needed to

19        prosecute the claimant.  [I]t need only be evident from the implications

20        of the question, in the setting in which it is asked, that a responsive

21        answer to the question or an explanation of why it cannot be answered

22        might be dangerous because injurious disclosure could result."

23   *Reiner*, 532 U.S. at 20-21 (quoting *Hoffman*, 341 U.S., at 486-87) (alterations in

24   original).  This means that the Fifth Amendment permits Plaintiff to decline to

25   provide his name.  *See e.g.*, *Hiibel v. Sixth Judicial Dist. Ct. of Nev.*, 542 U.S. 177,

26   189 (2004) (declining to hold that self-identification is non-testimonial and holding

27   instead that "[s]tating one's name may qualify as an assertion of fact" and be

28   "testimonial").

If the Fifth Amendment applies to the Government's demand for identification and other information from Plaintiff – and it most certainly does – then longstanding authority says that the Government cannot require Plaintiff's waiver of the Fifth Amendment before returning his property.  Almost 140 years ago, the United States Supreme Court rejected a statute that permitted the Government to seize property and then apply a negative inference from the owner's failure to provide information.  In *Boyd v. United States*, the Supreme Court emphatically held that "any forcible and compulsory extortion of a man's own testimony . . . to be used as evidence . . . to forfeit his goods" is unconstitutional and noted that "[i]n this regard the fourth and fifth amendments run almost into each other."  116 U.S. 616, 630 (1886) (overruled on other grounds by *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 309 (1967) (citing *Entick v. Carrington and Three Other King's Messengers*, 19 How. St. Tr. 1029 (1765)).  The *Boyd* Court stated that "any compulsory discovery by extorting the party's oath [in a proceeding] to forfeit his property, is contrary to the principles of a free government. It is abhorrent to the instincts of an Englishman; it is abhorrent to the instincts of an American.  It may suit the purposes of despotic power, but it cannot abide the pure atmosphere of political liberty and personal freedom."  *Boyd*, 116 U.S. at 631–32.

This principle, that a citizen is entitled to enjoy *both* his Fourth *and* Fifth Amendment rights, has been repeatedly recognized in the well-established rule that a defendant who chooses to provide testimony in support of a suppression motion cannot have that testimony used against him at trial:

> Thus, in this case [defendant] was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination.  In these circumstances, **we find it intolerable that one constitutional right should have to be surrendered in order to assert another**.

*Simmons v. United States*, 390 U.S. 377, 394 (1968) (emphasis added).  This rule is part of the larger rule that the Government cannot force an individual to surrender one constitutional right in order to assert another.  *See, e.g.*, *Lefkowitz v. Cunningham*, 431 U.S. 801, 807-08 (1977) (invalidating New York law that prohibited party invoking Fifth Amendment from holding public office); *Bittaker v. Woodford*, 331 F.3d 715, 724 n.7 (9th Cir. 2003) (defendant's right to assert ineffective assistance of counsel could not be conditioned on waiving attorney-client privilege in subsequent prosecution).

Further, even where the Fifth Amendment is balanced against a (mere) economic interest, rather than a fundamental right, the Government *still may not* use the threat against that economic interest to compel self-incrimination.  *See, e.g., Lefkowitz v. Turley*, 414 U.S. 70, 82–83 (1973) ("A waiver [of Fifth Amendment rights] secured under threat of substantial economic sanction cannot be termed voluntary."); *United States v. Ailemen*, 893 F. Supp. 888, 900 (N.D. Cal. 1995) (noting that property owner "felt constrained to choose between his right to claim his property and his right not to incriminate himself" and finding that "decision made under such constraint is not fairly considered 'voluntary.'").

Taken together, this means that the Government cannot hold Plaintiff's property hostage in an effort to compel his testimony.  Plaintiff is entitled to enjoy *both* his right to his property *and* his right to assert the Fifth Amendment.

**D.    Plaintiff is willing to disclose his identity to a special master or to a filter team**

The Government has claimed during various discussions with counsel that it needs Plaintiff's identity in order to confirm his ownership of the contents of Box 904.  Because Box 904 contains no documents or anything containing anyone's name, it is entirely unclear how Plaintiff's name could help confirm his ownership.  Nevertheless, counsel already has offered the Government the option of having Plaintiff identify himself to a special master or, even easier, to a member of a filter

team that could use it to confirm his ownership, to the extent that is helpful in any way.[8]

These proposed solutions are well within the Court's authority under Rule 41 and the Court's inherent equitable power. They are also "reasonable under the circumstances," which is the touchstone of Rule 41. *See* Fed. R. Crim. Pro. 41, 1989 Advisory Comm. Notes ("[R]easonableness under all of the circumstances must be the test when a person seeks to obtain the return of property."). Moreover, using a special master or a filter team would avoid any need to resolve the constitutional issue created by the Government's scheme. *Cf. Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (courts should not rule on constitutional bases if there exist other grounds on which the case may be resolved).

The Government did not even respond to Plaintiff's proposal that a special master or a filter team be used to confirm Plaintiff's ownership of the contents of Box 904. The only possible reason for this refusal is that the Government wants the name for investigatory purposes, which again reveals the Government's actual intention: the Government is improperly retaining Plaintiff's property for the purpose of forcing him to waive his Fifth Amendment rights. This is improper.

## V.

## CONCLUSION

This Rule 41 Motion does not seek adjudication of the dubious basis for the Government's seizure of Plaintiff's property in the first place. Instead, it seeks adjudication only of the question of whether the Government has any right to

---

[8] Another solution would be to immunize Plaintiff's statements in support of his effort to obtain his property and prove his ownership. This would be consistent with the line cases regarding compelled testimony for public employees. *See, e.g.*, *Gardner v. Broderick*, 392 U.S. 273 (1968) (state may compel testimony from police officers only if such testimony is subject to immunity protections). Plaintiff has no objection to this procedure either, though a special master or filter team seems a less drastic solution.

1  continue holding it.  Fortunately, the answer to that question is not difficult at all;

2  *even the Government* admits that it has no legal authority to do so.

3      Despite this admission, the Government seeks to use the property to leverage

4  criminal investigations of the box holders at USPV and seeks to hold that property

5  hostage – without legal authorization – to force box holders to waive their Fifth

6  Amendment rights and to give the Government "leads" in its investigations.  But as

7  the Supreme Court forcefully stated well over a century ago, "[this] is contrary to

8  the principles of a free government.  It . . . is abhorrent to the instincts of an

9  American.  It may suit the purposes of despotic power, but it cannot abide the pure

10  atmosphere of political liberty and personal freedom."  *Boyd*, 116 U.S. at 631–32.

11  The Government's scheme to continue holding the property unless Plaintiff provides

12  "leads" violates the Fourth and Fifth Amendments and must be rejected.

13      The Court should order the contents of Box 904 returned to Plaintiff upon

14  presentation of the key and the rental receipt for that Box, along with a description

15  of the contents.  To the extent there is *any* need for further information to confirm

16  ownership, the Court should order that Plaintiff may disclose that information to a

17  special master or to a filter team.

18  DATED:  May 4, 2021          Respectfully submitted,

19
20                              Benjamin N. Gluck
                                Nicole R. Van Dyk
21                              Ashley D. Bowman
                                Naomi S. Solomon
22                              Bird, Marella, Boxer, Wolpert, Nessim,
                                Drooks, Lincenberg & Rhow, P.C.
23

24

25                              By:     */s/ Benjamin N. Gluck*
26                                      Benjamin N. Gluck
                                   Attorneys for Plaintiff
27

28