JABA TSITSUASHVILI (Cal. Bar No. 30912)
jtsitsuashvili@ij.org
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel:    (703) 682-9320
Fax:    (703) 682-9321
*Attorney for Amicus Curiae Institute for Justice*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DISVISION**

| | |
|---|---|
| CHARLES COE,<br><br>            Plaintiff,<br><br>        v.<br><br>UNITED STATES OF AMERICA, ET AL.,<br><br>            Defendants | Case No.: 2:21-cv-3019-RGK-MAR<br><br>**MEMORANDUM OF THE INSTITUTE FOR JUSTICE AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF'S MOTION FOR RETURN OF PROPERTY** |

# TABLE OF CONTENTS

Page

INDEX OF AUTHORITIES..................................................................................iii

INTEREST OF *AMICUS CURIAE* ..................................................................3

ARGUMENT ........................................................................................................4

A.    A motion under Rule 41(g) provides the appropriate means to review and remedy the government's unconstitutional seizure ................................5

B.    This Court should exercise jurisdiction over Coe's 41(g) motion ........7

    1.    Coe, like all those who rented security boxes at U.S. Private Vaults, has a Fourth Amendment interest in the contents of his box and has been aggrieved by the government's action..................................8

    2.    The government's actions demonstrate a callous disregard for Coe's and others' Fourth Amendment rights ...........................................9

        a.    To obtain a valid warrant to search the boxes, the government would be required to demonstrate probable cause as to each box. It has not even tried.....................................................10

        b.    The government's conduct cannot be justified under any exception to the warrant requirement .................................12

    3.    The other factors for exercising jurisdiction over Coe's 41(g) motion are satisfied. ........................................................................17

C.    The only appropriate remedy for this violation is to order the immediate return of the subject property, without further delay...........................18

    1.    Granting Coe's motion will end the indefinite seizure of his property, which works an additional, separate Fourth Amendment injury...................................................................................................18

    2.    Granting Coe's motion will prevent the government from requiring him to prove his own innocence to recover his property .........................20

D.    Financial privacy is a central principle of the Fourth Amendment, not a
        basis for governmental suspicion ........................................................................22

CONCLUSION.........................................................................................................23

# INDEX OF AUTHORITIES

**Cases**

*Bartruff v. State*,
706 N.E.2d 225 (Ind. Ct. App. 1999)............................................................15

*Boyd v. United States*,
116 U.S. 616 (1886) ....................................................................20, 23, 24

*Brewster v. Beck*,
859 F.3d 1194 (9th Cir. 2017)....................................................................19

*California Bankers Ass'n v. Shultz*,
416 U.S. 21 (1974) ....................................................................................23

*Coffin v. United States*,
156 U.S. 432 (1895) ..............................................................................21, 22

*Colorado v. Bertine*,
479 U.S. 367 (1987) ..............................................................................13, 14

*Comm'r v. Shapiro*,
424 U.S. 614 (1976)....................................................................................5

*Commonwealth v. Davis*,
481 Mass. 210, 114 N.E.3d 556 (2019) .......................................................14

*Elrod v. Burns*,
427 U.S. 347 (1976) ....................................................................................17

*Florida v. Jardines*,
569 U.S. 1 (2013) ........................................................................................8

*Florida v. Royer*,
460 U.S. 491 (1983) ....................................................................................12

*Florida v. Wells*,
495 U.S. 1 (1990) ........................................................................................13

*G. M. Leasing Corp. v. United States*,
429 U.S. 338 (1977) ....................................................................................24

*Greenstreet v. County of San Bernardino*,
   41 F.3d 1306 (9th Cir. 1994)......................................................................11

*Kazazi v. CBP*,
   No. 18-mc-51 (N.D. Oh.)...........................................................................4

*Krimstock v. Kelly*,
   306 F.3d 40 (2d Cir. 2002)....................................................................5, 6

*Linda R. v. United States*,
   No. 21-cv-3554 (C.D. Cal.).......................................................................16

*Lyall v. City of Los Angeles*,
   807 F.3d 1178 (9th Cir. 2015)...................................................................9

*Maryland v. Pringle*,
   540 U.S. 366, 371 (2003)..........................................................................11

*McCaughtry* v. *City of Red Wing*,
   831 N.W.2d 518 (Minn. 2013)....................................................................3

*Melendres v. Arpaio*,
   695 F.3d 990, 1002 (9th Cir. 2012) ..........................................................17

*Nelson v. Colorado*,
   137 S. Ct. 1249 (2017).............................................................................21

*Ordonez v. United States*,
   680 F.3d 1135, 1140 (9th Cir. 2012) .........................................................18

*People v. Sandoval*,
   No. F058751, 2010 WL 5142385 (Cal. Ct. App. Dec. 20, 2010)................15

*Perez Cruz v. Barr*,
   926 F.3d 1128 (9th Cir. 2019)....................................................................11

*Ramsden v. United States*,
   2 F.3d 322 (9th Cir. 1993)......................................................................8, 17

*Rivera v. Borough of Pottstown*,
   No. 722 C.D. 2019, 2020 WL 57181 (Pa. Commw. Ct. Jan. 6, 2020) ......................3

*Sandoval v. County of Sonoma,*
   912 F.3d 509 (9th Cir. 2018) ................................................................. 19

*Serrano v. CBP,*
   975 F.3d 488 (5th Cir. 2020) .............................................................. 6, 7

*Smith v. City of Chicago,*
   524 F.3d 834 (7th Cir. 2008), *vacated as moot* 558 U.S. 87 (2009) ........... 6

*South Dakota v. Opperman,*
   428 U.S. 364 (1976) ...................................................................... 12, 14

*State v. $53,234.00,*
   No. CV-2016-66 (Okla. Dist. Ct.) ............................................................ 4

*State v. Bailey,*
   No. WD-89-15, 1989 WL 130855 (Ohio Ct. App. Nov. 3, 1989) ................ 15

*State v. Ramzy,*
   1993-NMCA-140, 116 N.M. 748, 867 P.2d 418 ..................................... 15

*United States v. $107,702.66 in U.S. Currency,*
   No. 14-cv-295 (E.D.N.C.) ...................................................................... 4

*United States v. $8,850,*
   461 U.S. 555 (1983) ............................................................................. 6

*United States v. Broadhurst,*
   805 F.2d 849 (9th Cir. 1986) ................................................................. 9

*United States v. Comprehensive Drug Testing, Inc.,*
   621 F.3d 1162 (9th Cir. 2010) ................................................................ 5

*United States v. Crozier,*
   777 F.2d 1376, 1380 (9th Cir. 1985) ..................................................... 11

*United States v. Garay,*
   938 F.3d 1108 (9th Cir. 2019), *cert. denied,* 140 S. Ct. 976 (2020) ......... 12

*United States v. Guerrera,*
   554 F.2d 987, 990 (9th Cir. 1977) .......................................................... 9

*United States v. James Daniel Good Real Property*,
  510 U.S. 43 (1993) ...............................................................................3

*United States v. Johnson*,
  889 F.3d 1120 (9th Cir. 2018).............................................................13

*United States v. Lyons*,
  898 F.2d 210 (1st Cir. 1990) .................................................................9

*United States v. Maddox*,
  614 F.3d 1046 (9th Cir. 2010).............................................................13

*United States v. Mancera-Londono*,
  912 F.2d 373 (9th Cir. 1990)...............................................................13

*United States v. Nieto-Rojas*,
  470 F. App'x 674 (9th Cir. 2012) ........................................................15

*United States v. Oriho*,
  969 F.3d 917 (9th Cir. 2020)...............................................................20

*United States v. Roberts*,
  430 F. Supp. 3d 693 (D. Nev. 2019), *appeal voluntarily dismissed*,
  No. 20-10026, 2020 WL 1952501 (9th Cir. Mar. 18, 2020) ....................16

*United States v. Rowland*,
  341 F.3d 774 (8th Cir. 2003)...............................................................16

*United States v. Spilotro*,
  800 F.2d 959 (9th Cir. 1986)..................................................................9

*United States v. Thomas*,
  878 F.2d 383 (6th Cir. 1989)...............................................................10

*United States v. Von Neumann*,
  474 U.S. 242 (1986) ...............................................................................6

*United States v. Wanless*,
  882 F.2d 1459 (9th Cir. 1989).......................................................13, 14

*United States v. Wetselaar*,
   No. 2:11-CR-00347-KJD, 2013 WL 8206582 (D. Nev. Dec. 31, 2013),
   *report and recommendation adopted*, No. 2:11-CR-00347-KJD,
   2014 WL 1366722 (D. Nev. Apr. 7, 2014)....................................................10

*Weeks v. United States*,
   232 U.S. 383 (1914) ......................................................................................21

**Statutes**

41 C.F.R. § 128-50.101 ..................................................................................14

**Rules**

Fed. R. Civ. P. 12..............................................................................................6

Fed. R. Civ. P. 26..............................................................................................7

Fed. R. Crim. P. 41(g) ............................................................................. passim

**Other Authorities**

Decl. of Special Agent Kathryn Dress in Support of Gov't Opp'n to *Ex Parte*
   Application for Temporary Restraining Order, *John Doe v. United States*, No. 21-
   cv-2803 (C.D. Cal. Apr. 2, 2021)...............................................................14

Federal Bureau of Investigation, Domestic Investigations and Operations Guide
   (2016) ..........................................................................................................14

Gov't Opp'n to *Ex Parte* Application for Temporary Restraining Order, *John Doe v.
   United States*, No. 21-cv-2803 (C.D. Cal. Apr. 2, 2021).......................... 2, 12, 20, 22

United States District Courts—National Judicial Caseload Profile, U.S. Courts (Dec.
   2020)..............................................................................................................7

Hundreds of property owners, including Plaintiff Charles Coe, desperately need this Court's help. On March 22, 2021, federal agents executed a search warrant at U.S. Private Vaults ("USPV"), a safety deposit box company in Beverly Hills. The company was being investigated for alleged offenses. But along with seizing property belonging to the company, the FBI seized every deposit box and all the items contained within. On the pretense that the government intends to forfeit the metal rack in which those items were held, the government *destroyed* that metal rack in order to access its contents. And on the pretense that the government must inventory the property to protect itself from claims of loss and theft, the government *unlocked* the otherwise securely locked boxes in order to search through their contents. The government now refuses to return those seized items unless their owners come forward, provide their names, and submit to an "investigation" of the circumstances surrounding their property.

The government's actions violate the Fourth Amendment. Charles Coe and USPV's other renters are USPV's customers, not business associates. The security boxes they rented were their private property, entitled to Fourth Amendment protection under any possible theory of that provision. Accordingly, the government should not have seized their items absent probable cause to think that those items were evidence of criminal activity. And yet the government admits that individualized probable cause is lacking: The government concedes that, "[t]o be sure, some of the customers of USPV are honest citizens." Gov't Opp'n to *Ex Parte* Application for Temporary Restraining

Order at 10, *John Doe v. United States*, No. 21-cv-2803 (C.D. Cal. Apr. 2, 2021) (hereinafter "*Doe* TRO Opp."). The government states that it must "distinguish between honest and criminal customers" before the property can be returned, *id.*, but under the Fourth Amendment the government was required to draw that distinction *before* it searched and seized the contents of the UPSV boxes. The government cannot retain property on the hope that it might develop probable cause at some future date.

Moreover, a review of the search warrant shows how the government has violated its clear terms. The warrant expressly told the government to follow its written inventory policies, which limit an inventory search to the sole purpose of officer safety and protecting the property owners (and the agency) against potential claims of loss or theft. Yet the government used drug-sniffing dogs on virtually all the cash found in the boxes, an action that serves only a criminal investigatory purpose. And the government's inventory records are woefully inadequate, as they provide little to no detail about what was in each box. The warrant also says *nothing* at all about retaining property pending an investigation into each box holder. In other words, the government's search and seizure has not been blessed by any judge.

Meanwhile, claimants who have filed forms with the FBI, requesting their property's return, are being told to wait months. Some individuals—primarily those represented by counsel—have received their property back. But many others have heard nothing apart from a single email stating that the FBI will be in touch at some later time.

The lack of any systematic process by which the government will return property to its lawful owners has resulted in a massive, continuing Fourth Amendment violation. Every day that passes compounds that violation, and the violation will be compounded even further if the government is allowed to carry forward with its plan to leverage return of the seized property to force individuals to consent to investigation of their private affairs. The Court should use its equitable powers to order Coe's seized property returned without delay.

## **INTEREST OF *AMICUS CURIAE***

The Institute for Justice ("IJ") is a nonprofit, public interest law center committed to securing the foundations of a free society by defending constitutional rights. A central pillar of IJ's mission is the protection of property rights, both because the ability to control one's property is an essential component of personal liberty and because property rights are inextricably linked to all other civil rights. See *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 61 (1993) ("Individual freedom finds tangible expression in property rights.").

IJ's work includes challenges to searches and seizures that are not properly supported by a warrant based on individualized probable cause. *See*, *e.g.*, *Rivera v. Borough of Pottstown,* No. 722 C.D. 2019, 2020 WL 57181 (Pa. Commw. Ct. Jan. 6, 2020); *McCaughtry* v. *City of Red Wing*, 831 N.W.2d 518 (Minn. 2013). In addition, IJ has challenged government property seizures, including on the ground that the seizure

was not justified by probable cause, in order to combat the government's practice of seizing assets in order to compel property owners to prove their own innocence to get their property back. *See*, *e.g.*, *United States v. $107,702.66 in U.S. Currency*, No. 14-cv-295 (E.D.N.C.) (seizure of cash from bank account); *Kazazi v. CBP*, No. 18-mc-51 (N.D. Oh.) (seizure of cash at airport); *State v. $53,234.00*, No. CV-2016-66 (Okla. Dist. Ct.) (roadside seizure of cash).

## **ARGUMENT**

The government in this case has disregarded the Fourth Amendment rights of hundreds of USPV customers, including Coe. Agents suspected USPV of wrongdoing, so they secured a seizure warrant. But in addition to seizing the property of the business, agents seized a nest of security boxes containing hundreds of people's property. The government could have simply secured the facility and alerted those people that they should come collect their belongings. But in the guise of an "inventory search," the government broke into each and every box, emptied it of its contents, and used drug-sniffing dogs on any cash that they encountered. And almost two months after that search, the government refuses to return those peoples' property unless they first identify themselves and submit to an investigation.

Part A of this brief explains that a 41(g) motion is an appropriate procedural vehicle to provide a prompt remedy for this violation. Part B explains that this Court should assert jurisdiction given the government's callous disregard of renters'

constitutional rights, the irreparable injury those renters are currently suffering, and their lack of any other adequate remedy at law. Part C explains that the only appropriate remedy for this violation is to order the property returned without any further delay or unlawful investigation. Lastly, Part D explains that the government's actions here are part of a larger effort to stigmatize and delegitimize financial privacy to the detriment of all Americans.

## A.  A motion under Rule 41(g) provides the appropriate means to review and remedy the government's unconstitutional seizure.

When the government unlawfully seizes property, Federal Rule of Criminal Procedure 41(g) provides a remedy for the unlawful seizure. *See United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1172 (9th Cir. 2010). When a 41(g) motion is made by a party who has not been criminally charged, the motion asks the court to invoke its civil equitable jurisdiction. *Id.*

Once filed, a Rule 41(g) motion should be briefed and decided *promptly*, in order to provide property owners with the kind of meaningful post-seizure review that due process requires. "[T]he Due Process Clause requires that the party whose property is taken be given an opportunity for some kind of predeprivation or *prompt* post-deprivation hearing." *Comm'r v. Shapiro*, 424 U.S. 614, 629 (1976) (emphasis added). For that reason, two federal circuits have held that due process requires a prompt post-seizure hearing when property is seized by state and local law enforcement. *See Krimstock v. Kelly*, 306 F.3d 40, 70-71 (2d Cir. 2002); *Smith v. City of Chicago*, 524

F.3d 834, 838-39 (7th Cir. 2008), *vacated as moot* 558 U.S. 87 (2009). In doing so, however, both courts have distinguished federal property seizures in part because of the perceived availability of relief under Rule 41(g). *See Krimstock*, 306 F.3d at 52 n.12; *Smith*, 524 F.3d at 837. Indeed, the Seventh Circuit stated that Rule 41(g) provides "similar relief to that which the plaintiffs in this case seek"—*i.e.* a prompt post-seizure hearing "to protect the rights of both an innocent owner and anyone else who has been deprived of property." *Smith*, 524 F.3d at 839. And, just last year, the Fifth Circuit rejected a claim seeking to compel the federal government to provide prompt post-seizure hearings, reasoning, in part, that the "availability of a prompt merits determination [under Rule 41(g)] minimizes any need for an interim hearing." *Serrano v. CBP*, 975 F.3d 488, 499 (5th Cir. 2020); *see also United States v. $8,850*, 461 U.S. 555, 568-69 (1983); *United States v. Von Neumann*, 474 U.S. 242, 244 n.3 (1986). Taken together, these decisions demonstrate that the federal appellate courts believe that Rule 41(g) should provide a means to obtain prompt review of federal property seizures.

The government's position in this litigation would prevent Rule 41(g) from serving that essential due process role. In the government's view, the government does not even have to *respond* to a Rule 41(g) motion for sixty days after it has been filed. *See* Doc. 26 at 5. Under that view, the government might respond to a Rule 41(g) motion with a motion to dismiss, which would trigger an entirely new briefing schedule. *See* Fed. R. Civ. P. 12. And then presumably the government also believes (if it follows its

own logic) that it should be entitled to a period of discovery, *see* Fed. R. Civ. P. 26, and that the case should not be set for an actual hearing until a year or more after it has been filed—as is the case in most civil litigation. *See* United States District Courts—National Judicial Caseload Profile, U.S. Courts at 68 (Dec. 2020) (reporting that the median time to trial for a civil case in 2020 in the Central District of California was 20 months).[1]

The result would be a shell game: When property owners argue that the federal government should be required to provide a procedure to ensure prompt judicial review after property seizures, federal appellate courts hold that Rule 41(g) provides the necessary "prompt merits determination," *Serrano*, 975 F.3d at 499. But when property owners actually attempt to make use of Rule 41(g), the government argues that a Rule 41(g) motion cannot be heard (much less decided) for months after filing. That cannot be right. The Court should consider Coe's Rule 41(g) motion without the unnecessary delay proposed by the government.

## B.   This Court should exercise jurisdiction over Coe's 41(g) motion.

The Ninth Circuit has told courts to balance four factors when deciding whether to exercise equitable jurisdiction in an action under Rule 41(g): (1) whether the Government displayed a callous disregard for the movant's constitutional rights; (2) whether the movant has an individual interest in and need for the property; (3) whether

---

[1] *Available at* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2020.pdf.

the movant would be irreparably injured by denying return of the property; and (4) whether the movant has an adequate remedy at law. *Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir. 1993). The Court may exercise jurisdiction even where one or more of those factors is not met. *See id*. Applying that standard, the Court should exercise jurisdiction here.

1.    Coe, like all those who rented security boxes at U.S. Private Vaults, has a Fourth Amendment interest in the contents of his box and has been aggrieved by the government's action.

Plaintiff Coe, like every box renter at USPV, qualifies as a person "aggrieved by an unlawful search and seizure of property or by the deprivation of property." The initial seizure at USPV occurred in March, with the result that Coe and the other box renters have now been without their property for almost two months. And to get that property back, the government is demanding that box renters identify themselves and undergo an investigation into the provenance of their own property.

The government's seizure of the contents of the USPV boxes triggers Fourth Amendment scrutiny. As the United States Supreme Court has recently re-established, "when the Government obtains information by physically intruding on persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred." *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (cleaned up). That is precisely what occurred here. Coe and others rented their security deposit boxes; just like one who rents an apartment, each renter had their own personal proprietary and

possessory interest in their security box and the items it contained. *United States v. Guerrera*, 554 F.2d 987, 990 (9th Cir. 1977) (person seeking return of property "must unequivocally claim a proprietary or possessory interest in that which was seized").

That is true no matter what Fourth Amendment approach this Court takes. Under a property rights framework, Coe and other USPV box renters obtained a property interest in their boxes when they signed contracts under which they paid money in exchange for the exclusive use of the space. *See Lyall v. City of Los Angeles*, 807 F.3d 1178, 1189 (9th Cir. 2015) (holding organizers who "had possession of the warehouse, the right to control it, and the right to bring an action in trespass against intruders" had standing to challenge warrantless entry). Their standing was complete upon execution of the contract; it made no difference whether they were at USPV at the time of the search. *United States v. Broadhurst*, 805 F.2d 849, 852 (9th Cir. 1986).

The same is also true under the reasonable expectation of privacy test. There can be no question that Coe and other USPV renters had a reasonable expectation of privacy in their security boxes. *See United States v. Spilotro*, 800 F.2d 959, 962 (9th Cir. 1986) (recognizing there was "no question that" the defendant had "standing to challenge the search of his home, person, and safe deposit box"). Those boxes are places where renters can store their property without concern of theft or prying eyes. *United States v. Lyons*, 898 F.2d 210, 213 (1st Cir. 1990) ("By placing personal effects inside the storage unit, Lyons manifested an expectation that the *contents* would be free from public view.");

*United States v. Thomas*, 878 F.2d 383 (6th Cir. 1989) (unpublished) (recognizing that "citizens have legitimate expectations of privacy in the contents of their safe deposit boxes"); *see also United States v. Wetselaar*, No. 2:11-CR-00347-KJD, 2013 WL 8206582, at *10 (D. Nev. Dec. 31, 2013), *report and recommendation adopted*, No. 2:11-CR-00347-KJD, 2014 WL 1366722 (D. Nev. Apr. 7, 2014) (finding that renters of security boxes "had a reasonable expectation of privacy in the contents, which include the space inside the box and the inner metal liner itself").

2.   <u>The Government's actions demonstrate a callous disregard for Coe's and others' Fourth Amendment rights.</u>

Because Coe and the other renters have Fourth Amendment rights in their contents of their boxes, the government needed a warrant to seize those contents. However, the warrant here did not authorize the intrusive search of the boxes performed by the government, and that search cannot be justified under any exception to the warrant requirement.

   a.  *To obtain a valid warrant to search the boxes, the government would be required to demonstrate probable cause as to each box. It has not even tried.*

If the government wanted to conduct an investigation into the contents of individual USPV boxes, the government had a simple option: It could get a warrant to search those boxes. But the government did not take that route, evidently because the government could not meet the standard to obtain such a warrant.

In order to obtain a warrant to search the individual boxes at USPV, the government would have had to separately establish probable cause for each box. *See Greenstreet v. County of San Bernardino*, 41 F.3d 1306, 1309 (9th Cir. 1994) (holding that "[a] search warrant designating more than one person or place to be searched must contain sufficient probable cause to justify its issuance as to each person or place named therein") (citation omitted); *see also Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (the belief of guilt in a probable cause determination must be particularized with respect to the person to be searched or seized); *Perez Cruz v. Barr*, 926 F.3d 1128, 1138 (9th Cir. 2019). In this context, probable cause would have presented a high barrier for the government: USPV's Beverly Hills location contained somewhere between 600 to 1,000 safe deposit boxes, and the government would have had to separately establish grounds to search each box.

The warrant application, however, attempted no such showing, and the government did not even attempt to obtain a warrant to search the individual boxes. To the extent that the warrant authorized *any* search of the individual boxes, it stated only that "agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property" and the search would "extend no further than necessary to determine ownership." Movant's Br. at 8, 9. Having obtained such a limited warrant, the government was bound by it. *See United States v. Crozier*, 777 F.2d 1376, 1380 (9th Cir. 1985) ("A warrant must particularly describe the

items to be seized and does not leave anything to the discretion of the executing officer."). That limited warrant does not remotely authorize the government's proposal to "examine the specific facts of each box" in order to "distinguish between honest and criminal customers." *Doe* TRO Opp. 10.

> b. *The Government's conduct cannot be justified under any exception to the warrant requirement.*

The government will likely argue that its search and seizure of Coe's box is justified under the inventory exception to the warrant requirement. It is not. The scope of any inventory search must be "limited in scope to that which is justified by the particular purposes served by the exception," *Florida v. Royer*, 460 U.S. 491, 500 (1983), and the search here is not nearly so limited.

As the Supreme Court has made clear, inventory searches serve three non-law enforcement purposes: (1) the protection of the owner's property while it remains in police custody; (2) the protection of the police against claims or disputes over lost or stolen property; and (3) the protection of the police from potential danger. *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). Inventory searches "are consistent with the Fourth Amendment only if they are not used as an excuse to rummage for evidence." *United States v. Garay*, 938 F.3d 1108, 1111 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 976 (2020).

To be frank, the government could have best furthered the protective interests articulated in *Opperman* by simply leaving the boxes in place. If the government

genuinely wished to seize the nest of security deposit boxes (as opposed to their contents) for potential forfeiture, it could have taken physical control of USPV's business space, kept the nest intact, and announced that renters should come collect their property. That plan would have ensured the protection of the renters' property, limited the government's liability, and avoided any danger to police or others. *See United States v. Maddox*, 614 F.3d 1046, 1050 (9th Cir. 2010) (holding inventory search unreasonable where less restrictive options were available). Indeed, by taking those simple steps, the government could have left intact the very nest of boxes it claimed it wanted to forfeit while simultaneously protecting box holders' property.

But even if the government had to conduct an inventory search of the boxes, the "purpose of such a search must be unrelated to criminal investigation." *United States v. Johnson*, 889 F.3d 1120, 1128 (9th Cir. 2018). To ensure that non-investigatory purpose, all "[i]nventory searches must be conducted according to standard agency procedures," *United States v. Mancera-Londono*, 912 F.2d 373, 375 (9th Cir. 1990), and any discretion exercised by officials must be exercised "according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Id*. (quoting *Colorado v. Bertine*, 479 U.S. 367, 375 (1987)). Inventory searches not carried out according to those standard criteria and procedures are unreasonable and unconstitutional. *See Florida v. Wells*, 495 U.S. 1, 4 (1990); *United States v. Wanless*, 882 F.2d 1459, 1463 (9th Cir. 1989). The government represented that it would follow

standard inventory procedures in its warrant application, and the Magistrate Judge directed the government to do precisely that in the warrant itself. *See* Movant's Br. at 8-9.

The government's actions here have materially deviated from both its own procedures and the magistrate judge's command. Perhaps the first deviation—and among the most egregious—was the government's admission that it used drug sniffing dogs in the course of its "inventory search." *See* Decl. of Special Agent Kathryn Dress in Support of Gov't Opp'n to *Ex Parte* Application for Temporary Restraining Order, *John Doe v. United States*, No. 21-cv-2803 (C.D. Cal. Apr. 2, 2021) at ¶ 3 (stating that "[d]rug detecting dogs alerted to most of the stashes of cash, but not all"). This aspect of the search materially deviates from the FBI and Department of Justice's inventory search guidelines, neither of which mention use of drug-sniffing dogs. *See* 41 C.F.R. § 128-50.101; Federal Bureau of Investigation, Domestic Investigations and Operations Guide, at § 19.7.3 (2016).

Using drug dogs to sniff currency also furthers *none* of the rationales for the inventory exception articulated in *Opperman*, *Bertine*, and *Wanless*. The only conceivable purpose for having drug dogs sniff currency during an inventory is to uncover evidence of criminal activity, but that purpose is constitutionally impermissible. *See, e.g.*, *Commonwealth v. Davis*, 481 Mass. 210, 219, 114 N.E.3d 556, 566 (2019) (holding inventory search invalid after stating that "[t]he use of a drug detection dog to

conduct what is supposedly a search to safeguard property – and not a search for drugs – raises a red flag"); *People v. Sandoval*, No. F058751, 2010 WL 5142385, at *4 (Cal. Ct. App. Dec. 20, 2010) (holding that the use of drug-sniffing dog was "beyond the scope of the inventory search"); *Bartruff v. State*, 706 N.E.2d 225, 229 (Ind. Ct. App. 1999) (holding, in part, that use of drug-sniffing dog at inventory search render said search both pretextual and invalid); *State v. Ramzy*, 1993-NMCA-140, ¶ 10, 116 N.M. 748, 750, 867 P.2d 418, 420 (invalidating inventory search where officers failed to follow routine procedure in use of drug-sniffing dog); *State v. Bailey*, No. WD-89-15, 1989 WL 130855, at *5 (Ohio Ct. App. Nov. 3, 1989) (invalidating search after holding that "we do not find any legitimate justification for the employment of a drug detection dog in an inventory search").[2] The government's use of drug dogs as part of its "inventory" is a key indication that the search was not an inventory at all.

The government also failed to do any kind of comprehensive or detailed inventorying during its "inventory" search. The government's "inventory," filed with the

_____

[2] The Ninth Circuit's holding in *United States v. Nieto-Rojas*, 470 F. App'x 674 (9th Cir. 2012), in no way changes that calculus. In that unpublished, non-precedential decision, the Ninth Circuit upheld a search of a vehicle at which a drug-sniffing dog was present. But the dog's presence had nothing to do with any inventory search; instead, officers had brought the dog to the traffic stop after Idaho officers told them that the vehicle's occupants were suspected of being involved in a drug transaction. *Id.* at 675-76. This is completely unlike the circumstances here, where Coe's and other renters' property was seized absent *any* suspicion of wrongdoing on their part. Indeed, the government's actions flouted the Magistrate's instructions that agents were *not* to conduct "a criminal search . . . of the contents of the safety deposit boxes."

search warrant return, provides no detail about the contents of any box; it says only that only that the Government seized a "Nest of Safe Deposit boxes, including shelving, boxes, hardware and bond tin." Meanwhile, the government's inventorying of the contents of each security box was even more unreasonable: One box renter, a doctor named "Linda R.," recently sued to press for the return of her property, specifically currency along with a number of gold and silver coins, and the property receipt that agents provided to Linda R. listed only "Misc. coins," "Misc. documents," and "Misc. packaging materials." *Linda R. v. United States*, No. 21-cv-3554 (C.D. Cal.). Such an "inventory" is useless from an inventory perspective, since it can neither protect the box holder from theft or loss, nor the government from accusations regarding the same.

The government's abject failure to perform even the most basic inventorying suggests that its promise to do just that was not made in good faith. *See, e.g.*, *United States v. Rowland*, 341 F.3d 774, 780 (8th Cir. 2003) (stating that police's recording of only a subset of property found during inventory search was contrary to "standardized police procedures"). In *Rowland*, the Eighth Circuit found that such incomplete inventorying, coupled with the calling of a drug sniffing dog to the ostensible "inventory search," meant the government's actions could not be justified under the inventory exception. *Id*. at 782; *see also United States v. Roberts*, 430 F. Supp. 3d 693, 707 (D. Nev. 2019), *appeal voluntarily dismissed*, No. 20-10026, 2020 WL 1952501 (9th Cir. Mar. 18, 2020) (holding that failure to properly and completely document property

indicated that inventory search of vehicle was pretextual). So too here. The government's purported inventory search is just a pretext for an unconstitutional investigation into the USPV box holders.

> 3.   The other factors for exercising jurisdiction over Coe's 41(g) motion are satisfied.

The government's callous disregard alone is enough for this Court to exercise jurisdiction over Coe's 41(g) motion. *Ramsden*, 2 F.3d at 325 (exercising jurisdiction under 41(g) balancing test despite movant not satisfying all four factors). But the facts here show that Coe and the other owners satisfy the other factors.

First, it is obvious that Coe (like all other owners) has an "individual interest in and need for" the seized property. *Id*.

Second, on the irreparable injury prong, the government's failure to promptly return that property deprives Coe of his Fourth Amendment rights. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (holding that "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

And finally, Coe has no adequate remedy at law. The government does not plan on prosecuting Coe; indeed, the Magistrate Judge understood just that when ordering the government to follow its inventory search protocols. Given that, Coe would not be able to challenge the government's actions via a motion to suppress in a criminal prosecution. *See Ramsden*, 2 F.3d at 326 (holding no adequate remedy existed where government did

not plan to prosecute Ramsden). Nor can Coe or other box owners later sue the United

States for the damages they have incurred. *See Ordonez v. United States*, 680 F.3d 1135,

1140 (9th Cir. 2012) ("[A]n award of money damages against the government under

Rule 41(g) is barred by sovereign immunity."). Accordingly, this Court should exercise

its equitable jurisdiction and rule on the merits of Coe's 41(g) motion.

**C.     The only appropriate remedy for this violation is to order the immediate
        return of the subject property, without further delay.**

To remedy the Fourth Amendment violation in this case, the Court should order

the government to return Coe's property forthwith. Neither Coe nor any other box renter

was the target of the government's investigation and nothing about the contents of their

security box is of evidentiary value against USPV. Given the default presumption that

property owners should be reunited with their property when criminal prosecutions are

neither imminent nor foreseeable, the balance of equities falls on Coe's side. And, as

detailed below, granting Coe's 41(g) motion will spare him further constitutional injuries

in the form of interminable delay and having to prove the provenance of his own

property.

1.     Granting Coe's motion will end the indefinite seizure of his property, which
       works an additional, separate Fourth Amendment injury.

It is not just the initial seizure of Coe's property that works a Fourth Amendment

injury, but its continued deprivation as well. The Ninth Circuit has recognized that the

Fourth Amendment applies *both* to the initial seizure and the continued retention of

property, with the result that the "Fourth Amendment is implicated by a delay in returning the property, whether the property was seized for a criminal investigation, to protect the public, or to punish the individual." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017) (cleaned up). Thus, in *Brewster*, the Ninth Circuit held that the 30-day impoundment of a vehicle "constituted a seizure that required compliance with the Fourth Amendment." *Id.* So too here. Even assuming the federal government validly seized the contents of the USPV boxes—and it did not, for all the reasons stated above—the government must separately justify the continued impoundment of that property.

The government cannot provide any justification for its ongoing, continued possession of the contents of the USPV boxes. The warrant issued for the seizure of the USPV boxes did not reach the contents of the boxes, and no judge has ever found probable cause to seize those contents. The government also has never otherwise claimed that it can demonstrate probable cause to seize those contents. Instead, the warrant application sought to justify the seizure of the contents as a necessary corollary to the seizure of the nest of boxes themselves; while that is wrong for all the reasons discussed above, that rationale also does not explain why the government must continue to hold onto those contents today. *See, e.g.*, *Sandoval v. County of Sonoma*, 912 F.3d 509, 516 (9th Cir. 2018) (government cannot continue to hold property without justification after "the initial justification dissipates"). With every day that passes, the

government's delay compounds the Fourth Amendment injury suffered by Coe and other box renters.

   2.   <u>Granting Coe's motion will prevent the government from requiring him to prove his own innocence to recover his property.</u>

The government's delay in returning property appears deliberate, as the government has indicated that it intends to "examine the specific facts of each box and each claim" in order to "distinguish between honest and criminal customers." *Doe* TRO Opp. 10. However, where the government has no justification to retain property, the government certainly cannot condition its return on a requirement that individuals prove their own innocence to get the property back.

By effectively holding the seized property hostage and forcing property owners to put forward sensitive and potentially incriminating personal financial information, the government's proposed procedure violates both the Fourth and Fifth Amendments. As the Supreme Court explained in *Boyd v. United States*, 116 U.S. 616, 630 (1886), "any forcible and compulsory extortion of a man's own testimony, or of his private papers to be used as evidence to convict him of crime, or to forfeit his goods, is within the condemnation of" the Fourth and Fifth Amendments, and, "[i]n this regard the fourth and fifth amendments run almost into each other." *See also*, *e.g.*, *United States v. Oriho*, 969 F.3d 917, 926 (9th Cir. 2020) (order directing defendant to repatriate foreign funds violated Fifth Amendment insofar as it would compel defendant to reveal existence of foreign accounts). If the government does not have probable cause that the contents of a

security box held in the USPV facility are somehow tainted by a crime, then the government must give those contents back. The government cannot hold onto the property and use it as leverage in order to extract additional information from USPV customers, in the hopes that by doing so it will somehow generate the probable cause that it currently lacks.

The Supreme Court's foundational opinion in *Weeks v. United States*, 232 U.S. 383, 393 (1914), confirms the point. In that case, the question was whether the government could "retain for the purposes of evidence" property that was unlawfully seized in violation of the Fourth Amendment. The Court held that it could not, and it explained that "[t]o sanction such proceedings would be to affirm by judicial decision a manifest neglect, if not an open defiance, of the prohibitions of the Constitution." *Id.* at 394. If the government could not retain the property at issue in *Weeks*—even though that property was itself evidence of a crime—then surely the government cannot retain property seized from USPV in order to obtain leverage to compel USPV customers to submit to investigation.

Indeed, the government's proposed procedure cannot be reconciled with the presumption of innocence, which the Supreme Court has recognized "lies at the foundation of our criminal law." *Nelson v. Colorado*, 137 S. Ct. 1249, 1255-56 (2017) (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)). The Supreme Court has recognized that the presumption of innocence "unquestionably" qualifies as a "principle

of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 1256 n.9 (cleaned up). And yet the government proposes to discard that presumption, and to adopt a procedure under which USPV customers are effectively deemed guilty until they can prove their innocence. Only after USPV customers run that gauntlet, the government suggests, can it "distinguish between honest and criminal customers." *Doe* TRO Opp. 10. That entire approach to this situation is fundamentally unconstitutional. Having seized all this property without any individualized probable cause, the government's *only* role at this stage is to safely return seized property to its owners.

## D.     Financial privacy is a central principle of the Fourth Amendment, not a basis for governmental suspicion.

At bottom, the government's conduct in this case appears to be driven by a sense that there is something suspicious—or, worse, criminal—about individuals' desire to retain privacy in their financial information. The government complains that "[b]y providing and promoting total anonymity, USPV caters to and attracts criminals, who seek to keep their identities and the source of their cash beyond the reach of law enforcement." *Doe* TRO Opp. at 1.

But this current of suspicion is wholly unwarranted. The government does not allege that USPV customers violated any law by using the facility, and in fact customers had good reasons to choose USPV's facility: It can be difficult to find safety box services today, as many banks no longer find the business profitable, and USPV's model

also offered faster access during more convenient hours. And, more fundamentally, customers do not need to justify a desire for financial privacy. Privacy is not a ground for suspicion. It is a fundamental constitutional value.

The Supreme Court recognized the importance of financial privacy in *Boyd*, in the context of a forfeiture action based on an alleged failure to pay import duties. In order to establish the "quantity and value" of the imported merchandise, the government sought to compel the defendants to produce invoices for the merchandise. 116 U.S. at 618. The Supreme Court, in turn, found that such compulsion would violate the Fourth and Fifth Amendments, explaining that those Amendments would prohibit "a compulsory production of a man's private papers to establish a criminal charge against him, or to forfeit his property." *Id.* at 622; *see also id.* at 624.

While the Supreme Court gave less protection to financial privacy in *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 78 (1974), which upheld limited bank reporting requirements under the Bank Secrecy Act, the decision in that case rested on the necessary concurring vote of Justice Powell. In his concurrence, Justice Powell stated that more searching invasions of persons' private financial information "would pose substantial and difficult constitutional questions." *Id.* (Powell, J., concurring). He also observed that "[f]inancial transactions can reveal much about a person's activities, associations, and beliefs," and, "[a]t some point, governmental intrusion upon these areas would implicate legitimate expectations of privacy." *Id.* at 78-79. Here, the

government has drilled into security boxes without justification—and, as explained above, without the protection of a valid warrant—and now intends to compel the owners of the boxes to submit to investigation of their private financial affairs. That is precisely the type of enhanced invasion of Americans' financial privacy that Justice Powell warned of in *Schultz*.

This is also precisely the type of invasion of financial privacy that inspired the adoption of the Fourth Amendment. The Fourth Amendment arose in opposition to the British practice of issuing "writs of assistance to the revenue officers," *Boyd*, 116 U.S. at 625, with the result that "one of the primary evils intended to be eliminated by the Fourth Amendment was the massive intrusion on privacy undertaken in the collection of taxes." *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 355 (1977). Absent that showing of probable cause, the privacy offered by USPV is not suspicious or unlawful. It is, instead, the exercise of a protected constitutional right.

## **CONCLUSION**

Nothing remotely justifies the government's actions. Accordingly, this Court should grant Coe's motion for return of property under Fed. R. Crim. P. 41(g) and return his property forthwith.

1

2   Dated: May 11, 2021                          Respectfully submitted,

3

4                                                By: /s/ Jaba Tsitsuashvili

5                                                Jaba Tsitsuashvili
                                                 jtsitsuashvili@ij.org
6                                                INSTITUTE FOR JUSTICE

7                                                901 North Glebe Rd
                                                 Arlington, VA 22203
8                                                Tel:   (703) 682-9320
                                                 Fax:   (703) 682-9321
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28