Benjamin N. Gluck - State Bar No. 203997
    bgluck@birdmarella.com
Nicole R. Van Dyk - State Bar No. 261646
    nvandyk@birdmarella.com
Ashley D. Bowman - State Bar No. 286099
    abowman@birdmarella.com
Naomi S. Solomon - State Bar No. 321357
    nsolomon@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile:  (310) 201-2110

Attorneys for Plaintiff Charles Coe

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CHARLES COE,<br><br>            Plaintiff,<br><br>   vs.<br><br>UNITED STATES OF AMERICA; TRACY L. WILKISON (OFFICIAL CAPACITY), KRISTI KOONS JOHNSON (OFFICIAL CAPACITY),<br><br>            Defendants. | CASE NO. 2:21-cv-03019-RGK (MAR)<br><br>**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR RETURN OF PROPERTY PURSUANT TO FED. R. CRIM. P. 41(g)**<br><br>*[Filed Concurrently With: Declaration of Benjamin N. Gluck; and Evidentiary Objections to Declaration of Lyndon Versoza]*<br><br>Date:   July 26, 2021<br>Time:   9:00 a.m.<br>Crtrm.: 850<br><br>Assigned to Hon. R. Gary Klausner<br><br>Complaint Filed: April 7, 2021 |

3730714.3

# I.

# INTRODUCTION

Movant Charles Coe filed this Motion for Return of Property on May 5, 2021. At that time, the Government had not sought to forfeit anything from USPV and was simply refusing to answer questions or return anything. After Mr. Coe filed, the Government successfully requested to extend its response deadline to July 26, 2021. In the interim, (a) the Government commenced an administrative forfeiture against *some of* Mr. Coe's property, (b) the Court ruled (in a related case) that the language of the administrative forfeiture notices was insufficient,[1] (c) USPV filed a claim on behalf of *all* property seized from its premises, and (d) Mr. Coe filed a claim for the property included in the Government's notice.

The Government has now filed an Opposition to Mr. Coe's Motion for Return of Property. The Government is wrong for at least four reasons:

*First*, the Government's arguments incorporating its Motion to Dismiss fail for the same reasons its motion fails—there is no pending forfeiture proceeding, Coe seeks property that was never within the forfeiture proceeding, the notices were defective, and with each filing the Government only bolsters Coe's Fifth Amendment arguments supporting his pseudonymous claim.

*Second*, the Government's assertion that in order to obtain his property Coe first must disprove all hypothetical bases on which the Government *could* seek to forfeit it is just wrong. No statute, case, rule, or regulation supports this novel – and dangerous – assertion.

---

[1] *See United States v. Clagett*, 3 F.3d 1355, 1356 (9th Cir. 1993) (permitting Rule 41(g) motion to proceed because government provided "constitutionally deficient notice" in administrative forfeiture proceeding).

3730714.3

2

PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HIS RULE 41(g) MOTION FOR RETURN OF PROPERTY

*Third*, the Government's proffered "evidence" is patently inadmissible – it violates the hearsay and best evidence rules, among other things – and therefore cannot be relied on by this Court.

*And fourth*, even if the Government's proffered "evidence" were considered, it falls woefully short of creating any "material disputed fact" because it fails to establish forfeitability.

The Government has failed to submit any *admissible* evidence that would create a genuine issue of material fact as to Mr. Coe's entitlement to the return of his property; Mr. Coe's motion should be granted and his property ordered returned. If the Court nonetheless finds that there is a question of fact regarding the return of Mr. Coe's property, the Court should permit Mr. Coe to take discovery and conduct an evidentiary hearing under Rule 41(g).

## II.

## ARGUMENT

### A. The Government's "Incorporated" Arguments From Its Motion To Dismiss Fail

The Government purports to incorporate its arguments from the Motion to Dismiss it filed in this matter. (Dkt. 45 ("incorporating" Dkts. 33, 38).) These arguments fail for the same reasons set out in Coe's Opposition and Surreply to the Motion to Dismiss, including the fact that Mr. Coe seeks the return of property that was never included in the Government's forfeiture notice in the first place. (Dkts. 37, 44.[2])

Moreover, if anything, the Government's arguments are now even weaker than before for at least two reasons. *First*, contrary to its assertion in its Reply (Dkt. 38), the Government now *has* accepted pseudonymous claims; thus, even if the administrative forfeiture proceedings as to some of Mr. Coe's property had not been

---

[2]   Mr. Coe incorporates those filings herein.

3

PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HIS RULE 41(g) MOTION FOR RETURN OF PROPERTY

terminated by USPV's claim, they certainly have been terminated by the filing of his own pseudonymous claim. (Declaration of Benjamin N. Gluck ("Gluck Decl." ¶ 2.)

*Second*, AUSA Rodgers's most recent declaration only lends further support to Coe's Fifth Amendment argument. Mr. Rodgers declares that he "requests" Mr. Coe's identity "so that the government can offer additional facts pertaining to matters such as whether plaintiff has a drug history, sufficient legal sources of income to justify his possession of the funds found in his box, and any other information pertaining to the issue of whether the funds are subject to forfeiture." (Dkt. 45-2 at 17:7-10.) In case there was any doubt from the Government's previous statements of its intent to investigate all USPV box-holders, it cannot now be disputed. Mr. Rodgers has declared under oath the Government's intent to use Mr. Coe's identity for the purpose of investigating whether he has committed crimes, which means he has shown a need to proceed pseudonymously.

**B.     The Government Is Just Wrong About The Supposed Burden Of Disproving "Hypothetical Forfeitability"**

The bulk of the Government's Opposition is based on the (incorrect) position that a party seeking return of property under Rule 41(g) bears the burden of first disproving all *hypothetical* forfeiture theories before that party can obtain the property. (Dkt. No. 45 at 8.) In support, relying on *United States v. Mills*, 991 F.2d 609, 612 (9th Cir. 1993), which states that a Rule 41(g) motion is properly denied if "the property is contraband or subject to forfeiture," the Government concludes that Mr. Coe has failed to carry the burden of "showing that the funds . . . were derived from legitimate sources and are therefore not subject to forfeiture." (*Id.* at 8:7-11.)

In so doing, the Government seeks to create a new rule that (a) is entirely unsupported and (b) would turn the Fourth Amendment and Rule 41(g) on their heads: that before a party may obtain the return of property under Rule 41(g), he must first prove that there are no hypothetical grounds on which the property *could* be forfeited. This is not the law.

"On a motion to return [property,] the burden is on the moving party to show that he or she is entitled to lawful possession of the property." 3A *Fed. Prac. & Proc. Crim., Motion to Return Property* § 690 (4th ed.). This element of "lawful possession" is typically satisfied by showing that the property was seized from the claimant: "The movant [for return of property] must establish lawful entitlement to the property. This burden is often satisfied by showing that the property was seized from the movant's possession, as *a person from whom property is seized is presumed to have a right to its return*. . . . Because the property was seized from Jackson's possession, he satisfied his initial burden and is presumed to have a right to its return[.]" *Jackson v. United States*, 526 F.3d 394, 396 (8th Cir. 2008) (*citing Bailey v. United States*, 508 F.3d 736, 739 (5th Cir. 2007) (emphasis added)).[3] Mr. Coe is prepared to prove – by his possession of the key and by his biometrics – that he possessed Box 904, which means he "is presumed to have a right to its return."

The Government relies entirely on the language in *Mills* saying that property is generally not returned under Rule 41 if it is "contraband or subject to forfeiture." But "subject to forfeiture" means that it is the subject of a forfeiture proceeding, not that it *could* be the subject of a *hypothetical* forfeiture proceeding that the Government *theoretically* could bring.

This is clear even from following the same authority as *Mills* itself. *Mills* cites *United States v. Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991), as the authority for the language quoted by the Government. *Mills*, 991 F.2d at 612. *Cauwenberghe* in turn cites and relies on *United States v. Wilson*, 540 F.2d 1100 (D.C. Cir. 1976), for that language. *Cauwenberghe*, 934 F.2d at 1061. And *Wilson* considered *and rejected* the precise argument that the Government posits here:

---

[3]   See also *United States v. Kaczynski*, 416 F.3d 971, 974 (9th Cir. 2005); *United States v. Potes Ramirez*, 260 F.3d 1310, 1314 (11th Cir. 2001); *United States v. Chambers*, 192 F.3d 374, 377 (3rd Cir. 1999).

> It goes without saying, that if the Government seeks to forfeit the property a proper proceeding should be instigated to accomplish that purpose. A claim by the owner for the return of his property cannot be successfully resisted by asserting that the property is *subject* to forfeiture. If the property is subject to forfeiture, appropriate proceedings should be started expeditiously.

*Wilson*, 540 F.2d 1100, 1104 (D.C. Cir. 1976) (emphasis in original); *see also United States v. Padilla* 151 F.R.D. 232, 235 (W.D.N.Y. 1992) ("Ordinarily it is an insufficient response on behalf of the government to a Rule 41[g] motion that the property sought to be returned is simply 'subject to forfeiture.'"). The Government cites no case in which a court actually imposed or even considered the burden the Government asserts here.

Lastly, it is worth pointing out the audacity of the Government's position. Under the Government's asserted rule, it could seize a citizen's property without a warrant or probable cause – as it did here – and refuse to return it unless and until the citizen affirmatively disproved all hypothetical bases for forfeiture even if the Government did not actually commence forfeiture proceedings. But this is not the law: "Property of private citizens simply cannot be seized and held in an effort to compel the possessor to 'prove lawful possession.'" *United States v. One Residence and Attached Garage of Anthony J. Accardo*, 603 F.2d 1231, 1234 (7th Cir. 1979).

**C.   The Government's "Evidence" Is Patently Inadmissible**

The Government claims Mr. Coe's property is "subject to forfeiture" based on the opinion of Postal Inspector Lyndon Versoza that the property is "linked to drug trafficking" because of (1) the canine alert; (2) the large amount of currency within the box; (3) the bundling and rubber-banding of the currently including the fact that the bundles had different amounts of cash and denominations within each bundle;

and (4) the currency without bank wrappers and consisting of old bills.[4]

These four bits of "evidence" fall woefully short of establishing anything relevant to the current motion, as discussed in Section II(D) below. But as set out in Coe's concurrently filed evidentiary objections, none of this "evidence" is admissible either.

***The purported canine alert***: The Government submits only a declaration from Mr. Versoza saying "I reviewed the declaration of the canine handler, which provides that the handler's trained, state-certified narcotic detection canine alerted on March 24, 2021 to the scent of controlled substances emanating from the cash in box number 904." (Dkt. 45-1 ¶ 7.) This is inadmissible hearsay and violates the best evidence rule. There is no admissible evidence of any canine alert.

***The large amount of currency***: The Government submits Mr. Versoza's statement that: "According to an official count conducted relative to the funds law enforcement officers found in box number 904 at US Private Vaults, a total of $914,700.00 in cash was situated within that box." (*Id.* ¶ 6.) No effort is made to establish the "official count" as a business record, which means that Mr. Versoza's statement about its contents is double hearsay, lacks foundation, and also violates the best evidence rule. There is no admissible evidence as to the amount of currency in Box 904.

***The condition of the currency***: Mr. Versoza bases his statement about the manner in which the cash was "bundled" on his "review of the video inventory of Box 904." (*Id.* ¶ 9.) Again, this is inadmissible hearsay, lacks foundation, and violates the best evidence rule. There is no admissible evidence of the condition of the currency in Box 904.

---

[4] Mr. Versoza also asserts that the cash is connected to money laundering. (Dkt. 45-1 ¶¶ 8, 10.) But he never bother to even explain what he is alleging. What type of laundering? In connection with what offense? He never says.

### D. The Government's (Inadmissible) Evidence Does Not Create A Genuine Issue Of Material Fact Because it Fails To Establish Forfeitability

The Government's Opposition is premised on the notion that the canine alert, the large amount of cash, and the condition of the cash are enough to "warrant their forfeiture." (Dkt. 45 at 8:12-13.) As shown above, the Government submits no admissible evidence and, moreover, is entirely wrong about the meaning of the "subject to forfeiture" standard, which means its argument necessarily fails. The Government's argument also fails because its proffered "facts" fail even to establish probable cause, much less actual forfeitability.[5]

***The purported canine alert:*** The Government's failure to provide any details of the alleged canine alert means that it cannot support probable cause. The Government fails to assert, for example, whether this was a "sophisticated dog alert," as described and relied on in the authority cited by the Government at footnote 3 in the Opposition.[6] Similarly, the Government fails to assert whether the dog alerted to one, some, or all of the "bundles" purportedly found in Box 904.[7] Nor does the Government address the obvious cross-contamination questions about the reliability of a dog sniff done inside a vault where other drug transactions (unrelated to Mr. Coe) allegedly took place and where other individuals (also

---

[5] Forfeitability requires a preponderance of the evidence. 18 U.S.C. § 983(c)(1) ("[T]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture").

[6] *See*, *e.g.*, *United States v. Currency*, U.S. $42,500.00, 283 F.3d 977, 982 (9th Cir. 2002) ("We recently held that a sophisticated dog alert, where the dog reacts only to ephemeral by-products of narcotics and not to commonly circulated currency, is an important factor in determining probable cause.").

[7] *See*, *e.g.*, *United States v. $506,231 in U.S. Currency*, 125 F.3d 442, 453 (7th Cir. 1997) (declining to "take seriously" evidence of dog alert because, among other things, dog "only identified narcotics on one bundle of the seized currency even though the officers seized 31,292 separate bills in multiple bundles").

unrelated to Mr. Coe) allegedly stored illegal drugs.[8]  Lastly, the Government offers no detail as to *which* drugs the dog allegedly alerted on.  Because marijuana possession is legal under state law, a marijuana alert would tell a very different story from, for example, a cocaine alert.  The Government never says what drugs were allegedly detected on Box 904.

***The large amount of currency*:**  The Government fails to acknowledge a critical distinction between this case and every case it cites.  Box 904 was stored at a public, commercial enterprise designed for the storage and protection of valuables.  Large amounts of currency are *exactly* what one would expect to find there.  Indeed, the Government already has returned valuables, including large amounts of currency, to customers of USPV.  This is entirely different from every case cited by the Government.[9]

---

[8]  *See* Dkts. 45-3 (USPV Indictment) at 22 ("USPV Officer and USPV Manager would negotiate drug deals illegal under California law within the secured space of USPV, and USPV Officer would store the cash proceeds from drug deals within a safety deposit box at USPV."); 33-4 (Palmerton Decl.) ¶ 2 ("While inventorying the contents of the safety deposit boxes, agents recovered drugs including fentanyl and OxyContin.").

[9]  The cases cited by the Government concern cash found in a traveler's luggage, *United States v. Currency U.S. $42,500.00*, 283 F.3d 977, 982-83 (9th Cir. 2002), in a traveler's pants pockets, *United States v. $22,474.00 in U.S. Currency*, 246 F.3d 1212 (9th Cir. 2001), in a bag in the car of a nervous, speeding driver, *United States v. $132,245.00 in U.S. Currency*, 764 F.3d 1055, 1058-59 (9th Cir. 2014), in a car with a digital scale, baggies, an air freshener, and a sack that smelled of marijuana, *United States v. $117,920.00 in U.S. Currency*, 413 F.3d 826, 829 (8th Cir. 2005), in a car with marijuana and a driver who admitted to smoking marijuana, *United States v. $84,615 in U.S. Currency*, 379 F.3d 496, 501 (8th Cir. 2004), in a traveler's bag wrapped in fabric softener and sealed in plastic, *United States v. $129,727 U.S. Currency*, 129 F.3d 486, 490 (9th Cir. 1997), and in a car inside foil-wrapped, vacuum-sealed envelopes, *United States v. Approximately $158,000.00 in U.S. Currency*, No. 1:12-CV-01260 AWI SMS, 2013 WL 1091395, *5 (E.D. Cal. Mar. 15, 2013).

Perhaps most significantly, the Postal Inspector declares – under penalty of perjury – that the amount of cash allegedly found in Box 904 is *not* consistent with classic indicia of drug trafficking:

> Based on my training and experience, I state the following. It is extremely unusual to find over $900,000 in cash in one place. **Even successful and professional drug traffickers and money launderers rarely have so much cash**, **as it is inherently suspicious and very difficult to spend**; cash transactions of $10,000 or more generate currency transaction reporting requirements.

(Dkt. 45-1 ¶ 8 (emphasis added).) Then in a mind-bending illustration of arguing backwards from a predetermined conclusion, Inspector Versoza concludes that because even successful drug traffickers rarely have this much cash, "the owner of the funds in Box 904 must [therefore] be either a top-level drug trafficker or money launderer." Thus does evidence of innocence (drug traffickers rarely have this much cash because they cannot spend it) magically become evidence of guilt (this must be the one-in-ten-thousand "top level" drug trafficker who doesn't even care about spending money). This is illogical.[10]

***The condition of the currency:*** The Government's assertions about old rubber bands does not apply to all of the contents of Box 904. The Postal Inspector himself declares that some of the bundles in Box 904 "had paper bank bands." (*Id.* ¶ 9.) Because the Inspector bases much of his conclusion on the fact that the money was "not withdrawn from banks" (*id.* ¶ 10(a)), this necessarily excludes the bundles with paper bank bands. But the Government offers no indication of how many bundles of cash were secured with rubber bands versus bank bands. Even if it did,

---

[10] Moreover, courts have consistently found that large sums of cash are insufficient to establish probable cause. *See, e.g.*, *United States v. $506,231 in U.S. Currency*, 125 F.3d 442 at 452 (7th Cir. 1997) (collecting cases).

none of the cases cited by the Government found that old bundles of cash, on their own, were enough to justify forfeiture.[11]

## III.
## CONCLUSION

The Government commenced administrative forfeiture proceedings as to *some* of Mr. Coe's property.  Whether that precludes this Court from considering that particular property is the subject of the Government's Motion to Dismiss.  No matter how that is resolved, at the very least Mr. Coe's remaining property is properly subject to this Motion for Return.

The Government has not proffered any admissible evidence that would establish any genuine issue of material fact.  To the extent, however, the Court does not grant the Motion for Return, Mr. Coe respectfully requests that the Court permit discovery to continue and set a status conference in 60 days, at which time the Court would set an evidentiary hearing to "receive evidence on any factual issue necessary to decide" Mr. Coe's Rule 41(g) motion.

DATED: July 12, 2021

Benjamin N. Gluck
Nicole R. Van Dyk
Ashley D. Bowman
Naomi S. Solomon
Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

By:    /s/ *Benjamin N. Gluck*
      Benjamin N. Gluck
   Attorneys for Plaintiff Charles Coe

---

[11] The Government's cases concerned bundles sealed in cellophane in a traveler's backpack, *United States v. $242,484.00*, 389 F.3d 1149, 1161 (11th Cir. 2004), a scenario in which multiple CIs, surveillance, and a controlled buy identified the location of the cash as involved in drug trafficking, *United States v. $12,390*, 956 F.2d 801, 806 (8th Cir. 1992), and the presence of cocaine, a false story about recreational travel, and the use of false registration documents, *United States v. $321,470.00, U.S. Currency,* 874 F.2d 298, 305 (5th Cir. 1989).